# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARY L. SANCHEZ,

       Plaintiff,

v.                                                                                     No. CIV 01-216 MV/LFG

LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

Plaintiff Mary Sanchez ("Sanchez") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Sanchez was not eligible for supplemental security income ("SSI"). Sanchez moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing. [Doc. 10.][2]

Sanchez was born on December 1, 1951 and was 46 years old when the administrative hearing was held. She has eleven years of education but did not attain a G.E.D. She has not worked since about 1991, but previously was employed as a cashier/bookkeeper/front end manager during a 14-

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Briefing is complete on Plaintiff's motion to reverse and remand although no reply was filed.

year span at a retail grocery, and worked as a landscaper with the State Fair for a short time. On June 24, 1997, Sanchez filed an application for SSI and alleges an onset date of May 31, 1997, based on hepatitis C and high blood pressure. [Doc. 11 at 1.] On May 31, 1997, Sanchez was diagnosed with "major depression" and began receiving outpatient therapy at UNM Mental Health at that time.

Sanchez's application for SSI was denied at the initial and reconsideration stages, and she sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held on August 11, 1998. In a decision, dated September 23, 1998, the ALJ found that Sanchez was not eligible for SSI because she retained the residual functional capacity ("RFC") to do sedentary work and to return to the work she performed previously as a bookkeeper. Sanchez challenged this determination to the Appeals Council which denied her request for review on January 24, 2001.

Sanchez presented three letters from two physicians to the Appeals Council, dated after the ALJ's decision, showing that she suffered from a long term chronic illness and symptoms of nausea, vomiting, headaches, fatigue, lethargy and depression. The two physicians recommended that she not work as long as she had those symptoms and that she was being evaluated every three months. (Tr. at 8, 12 and 15.) The Appeals Council stated that the recent physician letters were not material to the issue of whether Sanchez was disabled from the date she applied for SSI to the date of the ALJ's decision[3] and rejected her appeal. (Tr. at 5-6.) This appeal followed.

---

[3] In order to consider "new evidence," it must be material (reasonable possibility that it would have changed the outcome) and must relate to the time period for which the benefits were denied. Here, it is not clear that new evidence presented to the Appeals Council related to the period between application of benefits and the ALJ's denial. Therefore, it is not considered. 20 C.F.R. § 404.970(b); Boone v. Apfel, 1999 WL 668253 at *2 (10th Cir. Aug. 26, 1999). However, the Appeals Council indicated that since Sanchez had filed a new claim for benefits, her most recent evidence was being to sent to the local hearing office to be considered with her new claim. (Tr. at 5-6.) [Doc. 7 – Plaintiff's Notice of New Application.]

**<u>Standards for Determining Disability</u>**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[4] The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the Commissioner at step five. If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[5]

Briefly, the steps are: at step one, claimant must prove she is not currently engaged in substantial gainful activity;[6] at step two, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . .,"[7] at step three, the Commissioner must conclude the claimant is disabled if she proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[8] and, at step four, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[9] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering

---

[4] 20 C.F.R. § 404.1520(a)-(f) (1999); <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

[5] 20 C.F.R. § 404.1520(a)-(f) (1999); <u>Sorenson v. Bowen</u>, 888 F.2d 706, 710 (10th Cir. 1989).

[6] 20 C.F.R. § 404.1520(b) (1999).

[7] 20 C.F.R. § 404.1520(c) (1999).

[8] 20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means her impairment is "severe enough to prevent [her] from doing any gainful activity." 20 C.F.R. § 416.925 (1999).

[9] 20 C.F.R. § 404.1520(e) (1999).

3

claimant's RFC,[10] age, education and past work experience, she is capable of performing other work.[11] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove she cannot, in fact, perform that work.[12]

**Standard of Review and Allegations of Error**

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992). The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. Id. at 1497-98. In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he

---

[10] One's RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[11] 20 C.F.R. § 404.1520(f) (1999).

[12] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

4

> chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After evaluating Sanchez's medical records (Tr. at 23-27), the ALJ rejected Sanchez's claim for SSI at step four, concluding that she retained the RFC to return to the work she performed previously as a bookkeeper. (Tr. at 22.) In reaching this decision, Judge John Wren made the following findings: (1) Sanchez had not engaged in substantial gainful activity since 1991; (2) Sanchez's "controlled hypertension," "situational depression," and Hepatitis C were severe impairments but they did not meet or equal any of the Listings; and (3) Sanchez lacked the RFC to lift and carry more than ten pounds or more than that weight on a regular basis, or stand or walk for prolonged periods; (4) Sanchez's past work as a bookkeeper did not require the performance of work functions outside her medically determinable impairments; (5) her impairments did not prevent her from working as a bookkeeper; and (6) she was not under a disability, as defined by the Social Security Act, at any time through the date of the ALJ's decision. (Tr. at 6.) Judge Wren also found that her prior use of drugs and alcohol were not contributing or material factors to the determination of disability. (Tr. at 7.)

In this appeal, Sanchez asserts that the case must be reversed and remanded due to "at least three errors" committed by the ALJ: (1) failure to develop the record by not ordering a consultative examination; (2) lack of substantial evidence to support the step four finding; and (3) lack of substantial evidence to support the finding that Sanchez's nonexertional impairments did not

5

significantly affect her ability to work. [Doc. 11.] In addition, Sanchez claims that the ALJ's credibility determination was contrary to law. The Commissioner argues that the ALJ's decision was supported by substantial evidence and that his determination of nondisability was consistent with regulatory criteria. [Doc. 12.] However, the Commissioner did not respond at all to Sanchez's argument that the ALJ failed to develop the record.

After a review of the entire record, this Court agrees with Sanchez that the ALJ did not fully develop the record to support his ruling that Sanchez could return to her former work as a bookkeeper. In order for the step four finding to be valid, the ALJ must make specific findings concerning the physical and mental demands of Sanchez's previous job as a bookkeeper and her ability to return to that job with her RFC. Norris v. Apfel, 215 F.3d 1337 (Table, Text in Westlaw), 2000 WL 504882 at *1 (10th Cir. Apr. 28, 2000) (relying on S.S.R. 82-62). Sanchez's previous job demands were not discussed at all either at the hearing or in the ALJ's decision. Without such specific findings, the ALJ's decision is not supported by substantial evidence, and the Court recommends that the decision be reversed and the case remanded for a re-hearing.

### Summary of Sanchez's Work History and Medical Care/Conditions

At the time of the hearing, Sanchez lived with her 16 year old son.[13] When she submitted her application for SSI, she was receiving Aid to Families with Dependent Children ("AFDC") and food stamps, and was able to live off of this assistance. (Tr. at 70, 139.) However, in November 1997, she told her case manager at UNM Mental Health Center that she was receiving "a great deal of pressure to work from her caseworker at Human Services." (Tr. at 139.) Some of her mental health records show that she wished to pursue finding employment. (Tr. at 142, 146.) Others document

---

[13]Sanchez's other son was killed by gunshot in approximately 1990. (Tr. at 171.)

that she was upset when her application for SSI was turned down, believed the denial was due to being referred to vocational rehabilitation ("DVR"), did not want assistance with employment, did not want to work and preferred to live on AFDC. (Tr. at 285, 287.)

Sanchez was an intravenous drug user in the late 1980's, was incarcerated for possession of drugs from 1990-1991 and again in 1992-1993. (Tr. at 66, 169.) She received treatment at CASA in 1993 for drug use. (Tr. at 127, 139.) In 1997, she denied having used drugs recently. (Tr. at 169.) She was stabbed in the chest or neck by a previous boyfriend in about May 1997 and suffered other injuries from prior domestic abuse. (Tr. at 129, 169.) In 1997, it was noted that she had chronic hepatitis C (Tr. at 186, 123, 301.) In January 1998, a lab test revealed the hepatitis C was active. (Tr. at 281.) She also has other chronic physical complaints, including diarrhea, nausea, vomiting, back pain, asthma, high blood pressure, stomach and digestive problems, and fatigue. (Tr. at 281, 270, 246, 186, 138.) Her blood pressure was controlled through medication. (Tr. at 270.) She also complained of blurry vision. (Tr. at 252.) At the administrative hearing, Sanchez testified that she could not sit too long because of her back and problems with her kidneys, liver and stomach, regularly suffered from headaches, had diarrhea nine to ten times a day, had bladder control problems and had blurred vision. (Tr. at 39, 42-45.)

On July 31, 1997 (about a month after she applied for disability benefits), Sanchez had her first appointment at the UNM Health Center for complaints of depression, anxiety and sleep problems. (Tr. at 169.) As a result of that visit, she was diagnosed with "major depression" and prescribed an anti-depressant (Zoloft), along with medications for sleep and anxiety. (Tr. at 171.) It does not appear that medical records prior to July 31, 1997 documented any complaints of depression. On September 11, 1997, a psychiatric review was conducted for purposes of her

7

application for SSI, and Dr. Gabaldon noted that she had a diagnosis of "major depression" and a history of substance abuse, anhedonia or pervasive loss of interest in almost all activities, thoughts of suicide, and anxiety (Tr. at 272.) Although she had not made any suicide attempts (or perhaps had made one in the distant past), she stated in November 1997, that her son kept her from attempting suicide. (Tr. at 138.) Sanchez's case manager at UNM Mental Health Center noted that her depression had decreased on January 7, 1998 but that it "fluctuate[d] with her situation." (Tr. at 236.) At the administrative hearing, she testified that she felt too tired to do anything, wanted to isolate herself and cried a lot. (Tr. at 46-49.)

Between the years 1974-1988, Sanchez worked as a cashier, bookkeeper and front end manager for a retail grocery. (Tr. at 65, 114.) It appears that she worked as a bookkeeper from about 1983-1984. (Tr. at 114.) As a bookkeeper, she stated that she sat eight hours a day, but when working as a cashier she was always walking, standing, bending, lifting or carrying. (Tr. at 114.) While she frequently lifted up to 50 pounds as a cashier, she did not state what amount of lifting she did in her role as a bookkeeper. (Tr. at 114.) She worked as a landscaper at the State Fair from 1990-1991, but has not had gainful employment since 1991. (Tr. at 65, 115.) In 1997, Sanchez worked twenty hours without pay, as an "activities aide" at Albuquerque Manor (taking patients to the dining room for meals), for purposes of maintaining her AFDC payments. (Tr. at 116, 125.) However, she was having a difficult time doing this volunteer work because she did not feel well and needed to keep all of her doctors' appointments. (Tr. at 125.)

It does not appear that Sanchez has been engaged in any type of gainful work activity since 1991--or for approximately the last eleven years. It also appears from the medical record that some

part of Sanchez's failure to obtain employment stemmed from a concern of how to present her felony conviction on job applications. (Tr. at 149, 150, 152, 166.)

## Discussion

Because the ALJ's made his decision of non-disability at step four, this discussion will focus on the requirements of that part of the sequential analysis. The Tenth Circuit has explained that step four is comprised of three phases: (1) evaluation of a claimant's physical and mental RFC; (2) determination of the physical and mental demands of the claimant's past relevant work; (3) analysis as to whether the claimant has the ability to meet the job demands found on phase two despite any limitations found in phase one. Flores v. Apfel, 242 F.3d 388 (Table, Text in Westlaw), 2000 WL 1694301 at *1 (10th Cir. Nov. 13, 2000) (relying in part on Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) and Social Security Rulings ("S.S.R.") 86-8 and 82-62)).

While the claimant has the burden of proving a disability at step four, the ALJ has "a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. The duty is one of inquiry, ensuring that the ALJ is informed about 'facts relevant to his decision and [learns] the claimant's own version of those facts.'" Henrie v. United States Department of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993) (internal citations omitted). The ALJ must "fully investigate physical and mental demands of past work and compare them to claimant's capabilities." Henrie, 13 F.3d at 361 (*relying on* Nimick v. Sec'y of Health & Human Services, 887 F.2d 864, 866 (8th Cir. 1989)). The ALJ must make these findings himself on the record. Winfrey, 92 F.3d at 1025.

### A. *Phase One:*

During the ALJ's phase one analysis, he concluded that Sanchez had no significant non-exertional imitations which narrowed the range of work she could perform. Specifically, the ALJ found that her depression was controlled by medication and that she did not manifest any non-exertional limitations. (Tr. at 25.) However, it is not clear from the objective medical evidence that Sanchez's depression is "controlled by medication." Sanchez testified at the hearing that she was depressed, tended to cry easily and was isolating herself. Many of the medical records indicate that Sanchez felt depressed, anxious, was unable to sleep and had some suicidal thoughts. The April 1, 1998 letter from the attending psychiatrist at UNM Mental Health Center stated that she suffered from severe major depression and was on medication. The letter did not state whether the medication was controlling the depression. [Tr. at 233.]

One of the two [pre-April 1, 1998] records cited by the ALJ, in contrast, indicates that Sanchez was very ill with the cold and flu and that she did not want to meet with the case manager that day. The case manager then wrote that "at present does not require intervention" apparently referring to Sanchez's illness that day. That same record does note that Sanchez was "stable on medication, able to follow through on appointments depression has decreased but fluctuates with her situation." (Tr. at 286.) The other record cited by the ALJ is dated January 27, 1998, in which the same case manager documented that Sanchez had "situational depression, some isolation, continued low energy." (Tr. at 285.) These two medical records by Sanchez's case manager are not compelling evidence that Sanchez's depression was controlled by medication in view of more overwhelming medical evidence to the contrary.

It also is unclear, based on the objective medical evidence, whether the ALJ's conclusion is accurate that Sanchez did not manifest any non-exertional limitations. She testified at the hearing that she was isolating herself and found it difficult to interact with people. She was having problems with diarrhea, urinary incontinence and vomiting. Sanchez's medical records document these same complaints. Although the ALJ is not required to discuss every piece of evidence, he must "consider all relevant medical evidence of record in reaching a conclusion as to disability." Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989). Because these factors are not mentioned, the ALJ may have inadvertently overlooked some aspects of Sanchez's mental condition. Therefore, the Court will remand for a rehearing and request that the ALJ further develop the record as to Sanchez's mental condition. Should the ALJ conclude at the re-hearing that Sanchez does suffer from significant mental limitations, he should make specific findings in accordance with SSR 82-62 regarding whether the mental impairments are compatible with the performance of prior work.

In addition, the ALJ's decision summarizes some, but not all of Sanchez's exertional impairments. (Tr. at 24-25.) For example, he does not discuss Sanchez's complaint that she cannot sit for very long. However, the ALJ may have properly discounted these complaints since he did not find Sanchez's statements entirely credible due to discrepancies he found with her assertions and her medical history. (Tr. at 25.) Notwithstanding the ALJ's ultimate credibility finding, he does not delineate the "discrepancies." As a result, the analysis appears conclusory. Moreover, the ALJ proceeds by stating that he is convinced that Sanchez does suffer from fatigue due to her hepatitis C, but does not explicitly analyze whether this fatigue and "other symptomatology" impact her ability to perform her prior work as a bookkeeper. (*see* discussion below) On remand, the ALJ should further document the discrepancies on which he supports his credibility determinations.

### B. *Phase Two:*

The ALJ failed to make any of the second required findings regarding the demands of Sanchez's prior work. The ALJ made at least some of the first required findings by concluding that Sanchez retained the RFC to perform the exertional demands of sedentary work that never requires more than lifting or carrying ten bounds, etc. (Tr. at 25.) However, it appears that the ALJ may have omitted the second required finding by his conclusion that Sanchez's past work [as a bookkeeper] did not require performance of work activities precluded by her present impairments. (Tr. at 26, 27.) The ALJ briefly noted that her previous position of bookkeeper did not require her to lift more than ten pounds, without providing any support for this proposition from the record or the Dictionary of Occupational Titles. (Tr. at 25.) *See* Lohse v. Shalala, 28 F.3d 113 (Table, Text in Westlaw), 1994 WL 263699 at *4 (10th Cir. June 16, 1994) (ALJ may take administrative notice of requirements of jobs as they are usually performed in the national economy but the failure to identify the source of information precludes proper review of the ALJ's ultimate determination.)

"To make the necessary findings [during phase two], the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" Winfrey, 92 F.3d at 1024 (internal citation omitted). During the hearing, neither the ALJ nor Sanchez's non-attorney representative asked Sanchez any questions regarding her previous work as a bookkeeper and what she did in that role, with respect to physical or mental demands. Bookkeeping was not discussed at all during the hearing. In addition, the ALJ did not ask for

testimony from a vocational expert regarding Sanchez's prior work or current ability to perform that job.[14]

A "[c]laimant's past work experience qualifies as past relevant work if it was done within the last fifteen years, lasted long enough for [her] to learn to do it, and earned enough money to be considered substantial gainful activity." Norris, 2000 WL 504882 at *4 (*citing* 20 C.F.R. §§ 404.1565(a), 416.965(a)). The only information in the record regarding Sanchez's prior work as a bookkeeper includes Sanchez's statements that she worked as a bookkeeper from about 1983 to 1984[15] at a retail grocery and that she sat for eight hours a day to do this job. (Tr. at 114.) In the "Vocational Report," she also states briefly that she took register tape readings, pulled money from the registers and made sure everything was balanced as part of this job. (Tr. at 114.) There is no specific information in the record regarding the demands of the job, reasons she left that position, other than becoming the front end manager of the store, or her rate of pay.

At the re-hearing, the ALJ must adequately inquire into the demands of Sanchez's past job as a bookkeeper in accordance with the rules and regulations. *See* Jason v. Chater, 54 F.3d 787 (Table, Text in Westlaw), 1995 WL 275725 (10th Cir. May 10, 1995) (the factual record must be developed regarding pertinent physical and mental demands (where necessary) of the claimant's prior job).

---

[14]The Court is aware that the ALJ is not required to rely on a vocational expert's testimony at step four and that even if he does so, he must make the required findings on the record himself. A vocational expert may, however, provide information about the demands of the claimant's prior relevant work with respect to the required step four findings. Winfrey, 92 F.3d at 1025.

[15]It appears that Sanchez's work as a bookkeeper occurred just within the fifteen year time span that defines "past relevant work." Although Sanchez's prior work is "relevant" within this definition, such a finding is not terribly compelling in view of the changing set of skills (including increased automation of some fields) that would develop over a 15-year period.

C.  *Phase Three:*

Because the Court has found that the ALJ made no phase two findings, it follows that his ultimate conclusion, at phase three, that Sanchez could return to her previous job, cannot be supported or linked to the objective medical evidence.  Winfrey, 92 F.3d at 1025.  On remand, the ALJ must make findings that compare the physical and mental (as required) demands of Sanchez's prior work with her present capabilities.  However, the claimant continues to bear the ultimate burden of proving that she is disabled at step four of the sequential analysis.  The ALJ's "duty is one of inquiry and factual development."  Henrie, 13 F.3d at 361.

**Recommended Disposition**

That Sanchez's Motion to Reverse and Remand for Rehearing [Doc. 10] be granted for the reasons stated herein.

_____
Lorenzo F. Garcia
United States Magistrate Judge